IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Chassidy Still, Individually and as Parent and General Guardian of Jane Roe, a minor,<br><br>Plaintiff,<br><br>v.<br><br>United States of America; Aiken Professional Association, LLC; Aiken Regional Medical Centers, LLC; John Doe; Doe Corporation; Allison Jill Enter; Lorenzo Sampson; and Wellstar MCG Health, Inc.;<br><br>Defendants. | C/A No. 1:25-cv-13472-JFA<br><br>**MEMORANDUM OPINION AND ORDER** |

This case is currently before the court on Defendant Wellstar MCG Health, Inc.'s ("WMHI") motion to dismiss for lack of personal jurisdiction or in the alternative, failure to state a claim. (ECF No. 83). Plaintiff responded in opposition; thus, this matter is ripe for review.

For the reasons discussed below, Defendant WMHI's motion to dismiss is granted because WMHI is not subject to personal jurisdiction in South Carolina in this cause of action.

## I. FACTUAL BACKGROUND

Plaintiff brings this action on behalf of herself and as the guardian of her child, Jane Roe. Roe sustained puncture injuries after doing a backflip with a pencil in her back pocket in November 2022. (ECF No. 73, ¶ 33). Plaintiff contends that despite seeking medical care at Barnwell Pediatrics and Aiken Regional Medical Center, the pencil fragments remained in Roe's back. *Id.* ¶¶ 34–42. After a physician at Defendant Aiken Professional Association ("APA") recommended that Plaintiff obtain further treatment at Children's Hospital from Dr. Walters, Plaintiff went online, did research, and made an appointment for Roe at Children's

Hospital. *Id.* ¶ 27. From March 16, 2023, to April 24, 2024, Roe received medical treatment at Children's Hospital of Georgia in Augusta, Georgia. *Id.* ¶¶ 14, 30, 43. Plaintiff alleges that all twenty-nine appointments occurred in Georgia at Children's Hospital. *Id.* ¶ 30. During that time, Dr. Walters, Dr. Radi, and "other Wellstar personnel unreasonably failed to identify or remove the pencil fragments." *Id.* ¶ 44. Plaintiff contends that WMHI is vicariously liable for the actions and conduct of Dr. Walters, Dr. Radi, and other Children's Hospital personnel. *Id.* ¶ 31. Plaintiff does not specifically identify Walters, Radi, or others as employees of WMHI. Instead, Plaintiff alleges that "Wellstar identified Dr. Walters, Dr. Radi, and other Children's Hospital personnel as its medical providers and exercised control over them via rules, regulations, policies, procedures, and protocols" of Children's Hospital. *Id.* ¶ 31. WMHI disputes the agency relationship between WMHI and these doctors, describing Plaintiff's allegations as legal conclusions that deserve no presumptive truth. (ECF No. 83, p. 6–12).

After the alleged wrongful acts of Dr. Walters, Dr. Radi, and others, Plaintiff and Roe sought continued treatment from Dr. Nguyen at Children's Health. Id. ¶¶ 46–49. Plaintiff further alleges that WMHI, through the actions of Wellstar personnel, contacted Roe's doctors in South Carolina, delivered antibiotics to Barnwell, South Carolina, and gathered biometric data from Roe while she was in Barnwell South Carolina. *Id.* ¶ 29.

## II. LEGAL STANDARD

When a defendant challenges personal jurisdiction, the plaintiff has the burden of showing that jurisdiction exists. *See In re Celotex Corp.*, 124 F.3d 619, 628 (4th Cir. 1997). When the court decides a personal jurisdiction challenge without an evidentiary hearing, the plaintiff must prove a prima facie case of personal jurisdiction. *See Mylan Labs, Inc. v. Akzo, N.V.*, 2 F.3d 56, 60 (4th Cir. 1993). "In considering the challenge on such a record, the court

must construe all relevant pleading allegations in the light most favorable to the plaintiff, assume credibility, and draw the most favorable inferences for the existence of jurisdiction." *In re Celotex Corp.*, 234 F.3d at 628 (quoting *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989)). However, the court need not "credit conclusory allegations or draw farfetched inferences." *Masselli & Lane, PC v. Miller & Schuh, PA*, 215 F.3d 1320 (4th Cir. 2000).

In ruling on a motion to dismiss for lack of personal jurisdiction, the court may consider evidence outside of the pleadings, such as affidavits and other evidentiary materials, without converting the motion to one for summary judgment. *Magic Toyota, Inc. v. Se. Toyota Distributors, Inc.,* 784 F.Supp. 306, 310 (D.S.C. 1992). The plaintiff's showing must be based on "specific facts set forth in the record." *Id.*

In determining whether a prima facie showing has been made, the court may consider the uncontroverted allegations in the plaintiff's complaint. *Wolf v. Richmond Cnty. Hosp. Auth.,* 745 F.2d 904, 908 (4th Cir.1984). However, whenever a defendant's sworn affidavit contests the allegations in the complaint, the plaintiff can no longer rest on those allegations. *See id.* Instead, the plaintiff bears the burden to present an affidavit or other evidence showing jurisdiction exists over the nonresident defendant. *See id.*; *Clark v. Remark,* 993 F.2d 228, 1993 WL 134616, at *2 (4th Cir.1993) (unpublished table decision).

## III. DISCUSSION

Because this Court has no authority to bind a party over which it has no personal jurisdiction, Defendant's arguments as to personal jurisdiction must be addressed first.

### a. Personal Jurisdiction

"Under Rule 12(b)(2), a defendant must affirmatively raise a personal jurisdiction challenge, but the plaintiff bears the burden of demonstrating personal jurisdiction at every stage

following such a challenge." *Grayson v. Anderson*, 816 F.3d 262, 267 (4th Cir. 2016). In evaluating a challenge to personal jurisdiction under a state's long-arm statute, the court engages in a two-step analysis. *Ellicott Mach. Corp. v. John Holland Party Ltd.,* 995 F.2d 474, 477 (4th Cir. 1993). First, the state's long-arm statute must authorize the exercise of jurisdiction under the facts presented. *Id.* Second, if the statute does authorize jurisdiction, the court must then determine if the statutory assertion of personal jurisdiction is consistent with due process. *Id*. South Carolina's long-arm statute has been interpreted to extend to the outer limits allowed by the Due Process Clause. *Foster v. Arletty 3 Sarl*, 278 F.3d 409, 414 (4th Cir. 2002). Thus, the only question before the court is whether the exercise of personal jurisdiction would violate due process. *ESAB Grp., Inc. v. Centricut, LLC*, 34 F. Supp. 2d 323, 328 (D.S.C. 1999).

The due process test for personal jurisdiction involves two components: minimum contacts and fairness. *See World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 291–92 (1980). Under the minimum contacts test, a nonresident defendant must have certain minimum contacts such that the suit does not offend "traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. State of Wash., Office of Unemployment Compensation and Placement*, 326 U.S. 310, 316 (1945). Due process is satisfied if the court asserts personal jurisdiction over a defendant who "purposefully avails itself of the privilege of conducting activities within the forum state," *Hanson v. Denckla*, 357 U.S. 235, 253 (1958), such that it "should reasonably anticipate being haled into court there," *World-Wide Volkswagen*, 444 U.S. at 297. After a showing of the defendant's purposeful availment, the reasonableness inquiry balances any burden on the defendant against countervailing concerns such as the plaintiff's interest in obtaining relief and the forum state's interest in the controversy. *See id.* at 292.

A party may be subject to the court's power either through general personal jurisdiction or specific personal jurisdiction. A court has general personal jurisdiction over a foreign corporation when its contacts within the forum state "are so continuous and systematic as to render them essentially at home." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (quotes omitted). Specific personal jurisdiction arises when a cause of action is related to the defendant's activities within the forum state. *See* S.C. Code Ann. § 36-2-803; *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984).

### i. General Jurisdiction

Despite Plaintiff's repeated use of the term "continuous and systematic," WMHI is not subject to general personal jurisdiction in South Carolina. The "paradigm" forums in which a corporate defendant is "at home," are the corporation's place of incorporation and its principal place of business. *BNSF Ry. Co. v. Tyrrell*, 581 U.S. 402, 413 (2017) (quoting *Daimler*, 571 U.S. at 137). However, the exercise of general jurisdiction is limited to these forums; in an "exceptional case," a corporate defendant's operations in another forum "may be so substantial and of such a nature as to render the corporation at home in that State." *Daimler,* 571 U.S. at 139 n.19. Only when a war had displaced the corporate defendant and required temporary relocation did the Supreme Court authorize the exercise of general jurisdiction in a forum beyond these two locations. *See Perkins v. Benguet Consol. Mining Co.*, 342 U.S. 437, 448 (1952). Neither expansive operations nor an interstate business structure are exceptional. To exercise personal jurisdiction based on the "magnitude of [WMHI]'s in-state contacts," is to run afoul of the constitutional inquiry. *See BNSF Ry. Co.*, 581 U.S. at 414.

Instead, the Supreme Court has made clear that the "continuous and systematic" contacts alone are insufficient, such contacts must be of the quality *and* nature that renders the defendant

"at home" in the forum state. *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 592 U.S. 351, 352 (2021). Describing the principal place of business and state of incorporation as the "paradigmatic" bases for general jurisdiction, the Supreme Court has recognized that "[t]hose affiliations have the virtue of being unique—that is, each ordinarily indicates only one place—as well as easily ascertainable." *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014). In *Daimler*, the Supreme Court expressly declined to do exactly what Plaintiff asks this Court to do with regard to general jurisdiction. Recognizing that the examples from *Goodyear* were "exemplar bases" of personal jurisdiction, the Supreme Court rejected the exercise of general jurisdiction in every State in which a corporation "engages in a substantial, continuous, and systematic course of business" as "unacceptably grasping." *Daimler AG v. Bauman*, 571 U.S. 117, 137–38 (2014).

Here, Plaintiff offers substantial allegations about the extent of WMHI's business activities in South Carolina.[1] (ECF No. 73, ¶¶ 16–25) However, these can be summarized as general marketing endeavors and business operations. (*See* ECF No. 73, ¶¶ 16a–16x). The several pages of allegations about WMHI's contacts with South Carolina identify specific marketing campaigns such as the "Back to School" campaign. (*See, e.g.*, ECF No. 73, ¶ 16r, ¶ 16x). These activities are commonplace—not extraordinary—for an interstate entity. Further, Plaintiff includes allegations that WHMI pays South Carolina taxes and complies with state regulatory requirements, among other standard business practices. (ECF No. 73, ¶ 25). As the Court reiterated in *Mallory*, business operations alone are insufficient. *See Mallory v. Norfolk S. Ry. Co.*, 600 U.S. 122, 129–160 (2023). Plaintiff offers no allegations that WMHI engages in anything beyond ordinary business activities that would render them "at home" in South

[1] As discussed in detail below, the parties dispute whether these alleged contacts are even attributable to WMHI per the Stevens Affidavit (ECF No. 84-1), but at this stage, all factual disputes must be resolved in favor of Plaintiff.

Carolina. Thus, the question becomes whether WMHI has minimum contacts with South Carolina to support the exercise of specific personal jurisdiction.

#### ii. Specific Jurisdiction

In cases exercising specific jurisdiction over a nonresident defendant, the question is not only about the quantity of contacts, but the quality of those contacts in relation to the case before the court. To determine whether specific jurisdiction exists, courts employ a "minimum contacts" analysis that examines "(1) the extent to which the defendant 'purposefully avail[ed]' itself of the privilege of conducting activities in the State; (2) whether the plaintiffs' claims [relate to] or arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally 'reasonable.'" *ALS Scan, Inc. v. Digitial Serv. Consultants, Inc.*, 293 F.3d 707, 712 (4th Cir. 2002); *Doe v. Augusta Univ.*, No. 8:23-cv-6873-RMG-WSB, 2025 WL 2918366, at *17 (D.S.C. Sep. 12, 2025), *report and recommendation adopted*, No. 8:23-cv-6873-RMG, 2025 WL 2778474 (D.S.C. Sep. 30, 2025), *appeal dismissed*, No. 25-1650, 2026 WL 1864753 (4th Cir. June 29, 2026). Put simply, the defendant must have purposefully availed itself of the forum state in a way that is related to this cause of action.

***Purposeful Availment.*** The "purposeful availment" element ensures that a defendant will not be haled into court in a jurisdiction solely as a result of "random," "fortuitous," or "attenuated" contacts or the unilateral activity of another person or third party. *Burger King*, 471 U.S. at 475. The plaintiff must show that *the defendant* deliberately "reached out beyond" its home—by, for example, "exploi[ting] a market" in the forum State or entering a contractual relationship centered there. *Walden v. Fiore*, 571 U.S. 277, 285 (2014) (cleaned up).

Here, Plaintiff alleges that "Wellstar" engages in numerous activities in South Carolina; in fact, the majority of the Amended Complaint explains in painstaking detail "Wellstar's"

marketing plans, emergency medical operations, and other activities directed into South Carolina. (*See* ECF No. 73, ¶¶ 16a–16x). It is largely undisputed that these are intentional acts taken by "Wellstar"; however, the key inquiry of the first element of specific jurisdiction is whether the Plaintiff's "Wellstar" is actually WMHI; Wellstar Health System, Inc.; or some other subsidiary of Wellstar. Specific jurisdiction requires that the defendant—not just a related entity—purposefully avail themselves of the forum.

A parent and its subsidiaries are separate and distinct entities as a legal matter. *See Saudi v. Northrop Grumman Corp.*, 427 F.3d 271, 276 (4th Cir. 2005). It is well-established, that "the contacts of a corporate subsidiary cannot impute jurisdiction to its parent entity." *Id.* And Plaintiff has offered "no evidence of the nature of the relationship" between Wellstar Health System, Inc. and its subsidiaries—including WMHI that "would justify an exception to this general rule." *See id.* at 276–77. Plaintiff's only allegations are conclusory statements that WMHI is a "wholly owned subsidiary of Wellstar Health System, Inc. and is the agent, instrumentality, and alter ego through which Wellstar Health System, Inc. operates medical care facilities and manages medical care providers in both Augusta, Georgia and Aiken, South Carolina, pursuant to a partnership with the state of Georgia." (ECF No. 73, ¶ 13).

In this case, to depart from the general rule, Plaintiff would have to plausibly allege that the corporate veil should be pierced in such a way that the parent's actions bear on the subsidiary or that the actions of other subsidiaries bear on this subsidiary. Plaintiff invites this Court to adopt a broad reading of *International Shoe* that requires only that "such activities be undertaken with [WMHI]'s knowledge and for its benefit." (ECF No. 86, p. 7). Plaintiff's invitation includes no law to support its broad reading. The two cases cited in Plaintiff's response (ECF No. 86) are inapposite. *Columbia Briargate Co., v. First Nat. Bank in Dallas*, 713 F.2d 1052 (4th Cir. 1983),

was decided under a prior iteration of personal jurisdiction analysis that lacked the nuances of the current one. Even still, *Columbia Briargate* stands for the principal that the nonresident tortfeasor is subject to personal jurisdiction in the forum state, regardless of whether he was acting in his "corporate or personal role" when he committed the tort in the forum state. *Id.* at 1065. Plaintiff includes no allegations that Dr. Walters or Dr. Radi were employed by WMHI, but more importantly, the alleged medical malpractice occurred in Georgia, not South Carolina. Thus, even if that iteration of the jurisdictional analysis survived today, it tells this Court nothing about the issues in this case.

And *Gourdine v. Karl Storz Endoscopy-America, Inc.*, 223 F. Supp. 3d 475 (D.S.C. 2016), resolves the issue of imputed contacts based on the application of California agency laws which are certainly not at issue here. *Id.* at 494. WMHI does not dispute that the corporate veil can be pierced as a legal matter—only that to do so in this instance would be inappropriate.

Instead, precedent requires an agency or employment relationship between the actor and the defendant such that the actor's contacts can be fairly attributed to the defendant itself—not to fortuitous contacts resulting from unilateral acts by third parties. *See Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774 (1984). Plaintiff's argument that acts taken by Wellstar's comprehensive medical care system benefit WMHI as a part of that general system is understandable in a colloquial sense. However, the law respects corporate formalities and the distinct operations of the entities. Without more, Plaintiff's allegations offer no basis from which this Court could abandon the corporate formalities.

However, Plaintiff also argues to some extent that there is no need to disregard the corporate entities because Plaintiff broadly defines WMHI as "Wellstar" in the Amended Complaint. The issue WMHI identifies is that Plaintiff has alleged that "Wellstar"—meaning

WMHI—is itself responsible for these actions or at least, some alleged agency relationship attributes the actions of all Wellstar entities to WMHI. Because of Plaintiff's chosen short name is "Wellstar," the Amended Complaint includes numerous allegations about "Wellstar's" activities that WMHI flatly denies are properly attributed to WMHI. WMHI's position is that Plaintiff has conflated which actions are attributable to WMHI as compared to what Plaintiff describes as the "fully integrated Wellstar Health System." (ECF No. 83, p. 1). WMHI offers the Stevens Affidavit in an attempt to cure this confusion.

WMHI urges this court to resolve the specific jurisdiction question by relying on generalized denials from the Stevens Affidavit. Mr. Stevens is an officer of the parent company, Wellstar Health Systems, Inc. (ECF No., 83-1).[2] The Stevens Affidavit contests several allegations in Plaintiff's Amended Complaint that connect WMHI to South Carolina. For example, Plaintiff alleges that "Wellstar" owned and operated business in South Carolina, (ECF No. 73, ¶ 17), and that "Wellstar" actively advertised and solicited throughout the Aiken and Barnwell counties of South Carolina, (*Id.* ¶¶ 16t, 16v). The Stevens Affidavit states that WMHI has no regular business operations in South Carolina that relate to or give rise to this cause of action. (ECF No. 83-1, ¶ 14). To the extent that, as WMHI argues, the Amended Complaint includes conclusory allegations, (ECF No. 83, p. 12), the Stevens Affidavit responds with equally conclusory denials, (ECF No. 83-1, ¶¶ 12–18).

Plaintiff refutes the probative value of the affidavit because it does not identify the correct Wellstar entity, it merely disclaims WMHI's involvement. (ECF No. 86, p. 8–9 ("But the Stevens Affidavit does not explain who *does* operate those practices . . . ."")). Plaintiff's desire for

[2] Admittedly, WMHI's arguments as to corporate independence or lack of agency are not enhanced by having an officer of the parent entity attest to the acts and omissions of the subsidiary.

additional information from WMHI, as part of the "fully integrated Wellstar Health System," is understandable; however, WMHI is, as a general principle, under no obligation to identify the relevant party, even when it may be a parent or sister corporation. Yet, without supplying such a correction, the Court is left merely with a dispute of fact related to whether Plaintiff has carried its burden related to purposeful availment. Plaintiff alleges that "Wellstar"—meaning WMHI—engaged in these activities, and WMHI—via the Stevens Affidavit—claims that WMHI did not. While it is appropriate to consider the affidavit at this stage, this Court cannot resolve factual disputes in favor of the Defendant. *See Saudi*, 427 F.3d at 276. Therefore, this Court is reticent to rely on the Stevens Affidavit to resolve the question of personal jurisdiction as expeditiously as WMHI urges: at the purposeful availment prong.

***Relatedness***. Notwithstanding any factual dispute as to the purposeful availment prong, the question remains: were WMHI's alleged South Carolina contacts related to Plaintiff's cause of action? Even if, as Plaintiff urges, the Stevens Affidavit does not overcome Plaintiff's contention that the alleged Wellstar actions are fairly attributable to WMHI, this Court lacks specific jurisdiction over WMHI because Plaintiff failed to establish that WMHI purposefully availed itself of this forum *in a way related to this cause of action*. In other words, Plaintiff fails to carry its burden at the relatedness prong of specific personal jurisdiction, notwithstanding any dispute of fact as to purposeful availment.

For the second element of specific jurisdiction—whether a plaintiff's claims arise out of a defendant's activities directed at the state—"there must be 'an affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State.'" *Bristol-Myers Squibb Co. v. Super. Ct. of Cal.*, 582 U.S. 255, 262 (2017) (alteration in original) (quoting *Goodyear*, 564 U.S. at 919). "When there is no such connection,

specific jurisdiction is lacking regardless of the extent of a defendant's unconnected activities in the State." *Id.* (citing *Goodyear*, 564 U.S. at 930 n.6). This component of specific jurisdiction requires a 'relationship among the defendant, the forum, *and* the litigation." *Helicopteros*, 456 U.S. at 414 (emphasis added). The relatedness between WMHI's alleged activities directed into South Carolina and this cause of action is much more attenuated than the "strong 'relationship among the defendant, the forum, and the litigation'" that existed in *Ford*, as explained below. *See Ford Motor Co.*, 592 U.S. at 365 (quoting *Helicopteros*, 456 U.S. at 414).

WMHI urges this court to simplify this analysis by narrowing the relatedness inquiry to just a causation inquiry. (ECF No. 83, p. 20). This narrow reading of the Fourth Circuit's specific jurisdiction test articulated in *Consulting Eng'rs Corp. v. Geometric Ltd.*, 561 F.3d 273, 278 (4th Cir. 2009), fails to account for the subsequent evolution in specific jurisdiction jurisprudence. In *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 592 U.S. 351 (2021), the Supreme Court flatly rejected a "causation-only" approach to specific jurisdiction, noting that in fact, "some relationships will support jurisdiction without a causal showing." *Id.* at 361–62. Therefore, the second prong is correctly articulated as an inquiry into whether the claim arises out of or is sufficiently related to the defendant's in-state contacts—those same contacts used to satisfy the purposeful availment inquiry—to support the exercise of specific jurisdiction over the nonresident defendant in this cause of action. However, defining the inquiry to incorporate "relatedness" not just causation "does not mean anything goes." *Id.* "In the sphere of specific jurisdiction, the phrase 'relate to' incorporates real limits, as it must to adequately protect defendants foreign to a forum. *Id.* Many of these limits remain unchanged by *Ford*.

For example, as a general rule, an out-of-state tort does not support the exercise of specific jurisdiction over a nonresident tortfeasor based solely on the plaintiff's residence. *See*

*Walden*, 571 U.S. at 284–86. This is especially true in cases involving medical malpractice. In *Coggeshall v. Reprod. Endocrine Assocs. of Charlotte*, 376 S.C. 12, 655 S.E.2d 476 (2007), the South Carolina Supreme Court addressed nonresident medical providers and personal jurisdiction based on medical care of a resident plaintiff. In that medical malpractice case, the nonresident defendant was a member of a medical network that included a member in South Carolina, earned substantial revenue from South Carolina patients, serviced and sent bills to over 3,000 South Carolina patients during the four-year span. *Id.* at 17, 655 S.E.2d at 479–80. In discussing the exercise of specific jurisdiction, the court made clear that medical torts—such as medical malpractice—are caused in the state in which they occur, not in which the patient resides. *Id.* at 20, 655 S.E.2d. at 481.

A relationship between the defendant and the forum state alone fails to establish the "essential foundation" of specific jurisdiction. *Ford*, 592 U.S. at 365 (quoting *Helicopteros*, 456 U.S. at 414). The third party to that relationship—the litigation—is the very nature of the relatedness inquiry.

Here, there is no question that the medical treatment Plaintiff alleges is attributable to WMHI occurred in Georgia, not South Carolina. (ECF No. 73, ¶¶ 30, 43, 44). Roe's alleged injuries were not caused in South Carolina, but in Georgia. Therefore, the causation inquiry falls flat. Instead, Plaintiff contends that this cause of action relates to WMHI's marketing efforts and physician referral network. (ECF No. 86, p. 9). Therefore, the inquiry is whether this cause of action relates in any way to those contacts, not Plaintiff's allegations of Georgia-based contacts by WMHI.

As discussed above, Plaintiff alleges that there are continuous and systematic contacts between "Wellstar" and South Carolina based on the existence of a referral system of Wellstar

locations in South Carolina. Plaintiff alleges that "Wellstar" regularly targets South Carolina patients and develops relationships with South Carolina doctors. *Id.* at p. 8–9. Plaintiff alleges that this "referral network" is sufficient to establish personal jurisdiction, relying on *Ford*. *Id.* at p. 9.

The Fourth Circuit recognized the potential relevance of "solicitation" or "patient referral" contacts, those contacts may satisfy the first element—purposeful availment—but the Plaintiff must still plead with facts, not conclusions, how those contacts are related to this cause of action.[3] Although some cases have suggested that the exercise of personal jurisdiction may be proper based on the existence of referral networks and solicitation, Plaintiff's Amended Complaint lacks the necessary factual allegations to establish that any such referral network or solicitation was *related to this cause of action*. Instead, Plaintiff alleges only that "a physician at

[3] In *Wolf v. Richmond County Hospital Authority*, 745 F.2d 904 (4th Cir. 1984), the Fourth Circuit declined to exercise personal jurisdiction over a Georgia hospital in South Carolina even though the hospital received one-fifth of its income from South Carolina residents because the hospital did not advertise for or solicit South Carolina patients. 745 F.2d at 912 ("The cases relied on by the [plaintiffs] in which doctors or medical facilities were found to be subject to the jurisdiction of a foreign court are distinguishable because, in these cases, the defendant either actively solicited or encouraged the nonresident to travel to their facility for treatment or had patient referral or transfer contacts."). However, the court in *Wolf* was applying an iteration of the personal jurisdiction inquiry that has since been abandoned, or at least substantially refined by later caselaw. *Compare Wolf v. Richmond Cnty. Hosp. Auth.*, 745 F.2d 904, 909 (4th Cir. 1984) ("To establish personal jurisdiction over an out-of-state defendant under the 'doing business' provision, the 'contacts between [the defendant] and the State must be fairly extensive before the burden of defending a suit there may be imposed upon it without offending "traditional notions of fair play and substantial justice."'"), *with Ford*, 592 U.S. at 359–60 ("Or put just a bit differently, "there must be 'an affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation.'" (quoting *Bristol-Myers Squibb Co. v. Super. Ct. of Cal.*, 582 U.S. 255, 262 (2017))).

APA suggested getting a second opinion from Dr. Walters at Children's Hospital." (ECF No. 73, ¶ 27). Upon that third party's recommendation, Plaintiff tracked down the contact information and made an appointment for Jane Roe at Children's Hospital. *Id.* Plaintiff does not allege that the referral came from another Wellstar-branded facility. Plaintiff does not allege that Plaintiff was led to WMHI by targeted solicitations. This Court need not credit Plaintiff's conclusory allegation that the appointment was the result of "Wellstar's systematic and continuous efforts to market, advertise, and brand itself as a regional provider . . . and to encourage South Carolina physicians to refer their South Carolina patients to Wellstar providers," (ECF No. 73, ¶ 28). *Consulting Eng'rs Corp. v. Geometric Ltd.*, 561 F.3d 273, 276–77 (4th Cir. 2009); *Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 396 (4th Cir. 2003). Plaintiff offers no allegations that the recommending physician from APA interacted with any solicitation or even the generalized "business strategy" implemented by "Wellstar"—only that "[Plaintiff] and her child ended up right where Wellstar wanted them: . . . part of the Wellstar Health System." (ECF No. 86, p. 4).

Plaintiff argues that the Stevens Affidavit does not "deny that the Wellstar-branded medical practices in Aiken serve as referral hubs for [WMHI]." (ECF No. 86, p. 9). However, Plaintiff never alleges that Plaintiff relied upon or Roe visited a "Wellstar-branded medical practice" as a referral hub. The existence of a "Wellstar-branded" interstate medical practice that uses a referral system alone does not establish specific jurisdiction. Without an allegation that Roe was a patient within that referral system, this cause of action could not possibly relate to the referral system. The Amended Complaint includes no such allegations. Thus, Plaintiff has not carried its burden. Instead, Plaintiff asks this Court to assume that "Wellstar's" marketing endeavors, not an independent third-party, led Plaintiff from South Carolina to Georgia to seek

medical treatment.

Plaintiff, at best, alleges that she succumbed to brand awareness. Such conclusory allegations lack the specific facts to plead a prima facie showing of personal jurisdiction. To the extent that Plaintiff argues that the recommending physician or Plaintiff herself were drawn to WMHI through exposure to generalized advertising, this Court feels that stretches the relatedness inquiry a bit too far where, as here, the injury itself occurred in Georgia, not the forum state. Such an expansive reading of *Ford* threatens to collapse the personal jurisdiction inquiry into one of mere quantity, not quality.

In making this argument, Plaintiff argues that the South Carolina referral network "worked as intended." (ECF No. 86, p. 9). Plaintiff and WMHI disagree about the applicability of *Ford* in this case. *Ford* addresses an in-state tort. The plaintiff purchased the vehicle out of state, but the vehicle malfunctioned in the forum state. That, in conjunction with Ford's extensive marketing and servicing of those vehicles in the forum state, created the strong relationship "among the defendant, the forum, and the litigation." *Ford*, 592 U.S. at 365. ("When a company . . . serves a market for a product in a State and that product causes injury in the State to one of its residents, the State's courts may entertain the resulting suit." *Id.* at 355. In *Ford*, the defendant "systematically served a market in Montana and Minnesota for the very vehicles that the plaintiffs allege[d] malfunctioned and injured them in those States." *Ford*, 592 U.S. at 365.

This case resembles *Ford* only in that both involve resident plaintiffs and in-state marketing. In *Ford*, the plaintiffs were residents of the state in which both the defective product caused the accident and the suit was brought. *Id.* In large part, what distinguished *Ford* from earlier cases like *Briston-Myers Squibb* and made the exercise of specific jurisdiction constitutional is that the incident occurred in the forum state. *Id.* at 370 ("[T]he plaintiffs are

residents of the forum States. They used the allegedly defective products in the forum States. And they suffered injuries when those products malfunctioned in the forum States. In sum, each of the plaintiffs brought suit in the most natural State—based on an 'affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that t[ook] place' there." (second and third alterations in original) (internal citation omitted)).

Here, Plaintiff and Jane Roe are residents of South Carolina. But, importantly, the allegedly negligent acts occurred in Georgia. Even if, as discussed above, the Stevens Affidavit does not overcome the argument about purposeful availment, the Amended Complaint includes no allegations of wrongful acts by WMHI in South Carolina. In fact, all alleged negligence by Dr. Walters, Dr. Radi, and "other Wellstar personnel" is alleged to have occurred in Georgia at Children's Hospital.

Another key distinction from *Ford* is that although both involve torts, medical malpractice differs in character from a products liability action. *See Wolf v. Richmond Cnty. Hosp. Auth.*, 745 F.2d 904, 911 (4th Cir. 1984) ("Cases involving medical services are quite different from those involving other commercial activity." (quoting *Hume v. Durwood Medical Clinic, Inc.*, 318 S.E.2d 119, 122 (S.C. App. 1984)); *Coggeshall v. Reprod. Endocrine Assocs. of Charlotte*, 376 S.C. 12, 17, 655 S.E.2d 476, 479–80 (2007).

Due to the nature of medical services, courts generally decline to exert jurisdiction over out-of-state physicians unless there are countervailing circumstances indicating that the physician purposefully availed himself of the forum state. *Ruhe v. Bowen*, No. 2:15-cv-03792-DCN, 2016 WL 5372555, at *4 (D.S.C. Sep. 26, 2016) (collecting cases); *see also Colson v. Samson Hair Restoration, LLC*, 837 F. Supp. 2d 564, 569 (D.S.C. 2011) ("In assessing Dr. Stiller's contacts with the forum state, the court is mindful that '[c]ases involving medical

services are quite different from those involving other commercial activity.'" (quoting *Wolf v. Richmond County Hosp. Auth.*, 745 F.2d 904, 911 (4th Cir. 1984)); *Doe v. Augusta Univ.*, No. 8:23-cv-6873-RMG-WSB, 2025 WL 2918366, at *17 (D.S.C. Sep. 12, 2025), *report and recommendation adopted*, No. 8:23-CV-6873-RMG, 2025 WL 2778474 (D.S.C. Sep. 30, 2025), *appeal dismissed*, No. 25-1650, 2026 WL 1864753 (4th Cir. June 29, 2026).

Plaintiff glazes over the core of the issue in this case as it relates to WMHI: medical treatment that occurred in Georgia, performed by Georgia doctors. The subsequent prescriptions or monitoring in South Carolina—none of which are alleged to be wrongful—[4]do not subject WMHI to personal jurisdiction in South Carolina.

Notwithstanding the issues of contact attribution discussed above, to the extent that Plaintiff alleges that continuing care establishes relatedness, it does not. Although no court has identified the exact point at which the interstate doctor-patient relationship becomes a basis for specific jurisdiction over the nonresident doctor, several cases are illustrative as to the outcome in this case.

Even in cases where the plaintiff alleged that the prescriptions caused the injuries, the nonresident hospital is not automatically subject to personal jurisdiction based on the plaintiff's residence. *See Wright v. Yackley*, 459 F.2d 287, 289–91 (9th Cir. 1972); *Colson v. Samson Hair Restoration, LLC*, 837 F. Supp. 2d 564, 569 (D.S.C. 2011) (quoting *Wright v. Yackley,* 459 F.2d 287, 289–90 (9th Cir. 1972)). When other courts have wrestled with similar questions, they have often split hairs. *See Burmeister v. Peterson*, No. 25-2690, 2026 WL 2241791, at *2 (9th Cir. Aug. 4, 2026) (distinguishing *Cox* based on whether the prescriptions and follow up care were

[4] In fact, the only allegations in the Amended Complaint that involve prescriptions were prescribed after the care by Dr. Walters and Dr. Radi had ceased. (See ECF No. 73, ¶ 52).

"'at the heart of this' dispute" (quoting *Cox v. Gritman Med. Ctr.*, 170 F.4th 724, 739 (9th Cir. 2026))); *Colson v. Samson Hair Restoration, LLC*, 837 F. Supp. 2d 564, 569 (D.S.C. 2011).

The Ninth Circuit has distinguished even the prescription-based medical malpractice claims that included "systematic or continuing" out-of-state transmissions from those that include a "singular or isolated occurrence." *Cox v. Gritman Med. Ctr.*, 170 F.4th 724, 738 (9th Cir. 2026) ("[Defendant] argues that [defendant]'s acquiescence to a patient's choice for where prescriptions are sent is not purposeful availment of another state's market and laws. That is true in cases like *Wright* [*v. Yackley*] where the out-of-state transmission is a singular or isolated occurrence. But for the reasons already discussed, we reject this argument where the out-of-state transmission is a 'systematic or continuing effort.'" (quoting *Wright v. Yackley,* 459 F.2d 287, 290 (9th Cir. 1972))).

In *Cox v. Gritman Medical Center*, 170 F.4th 724 (2026), the Ninth Circuit authorized the exercise of personal jurisdiction over a nonresident hospital when the medical malpractice claims involved the prescriptions that the doctor had been prescribing for several years to a nonresident patient. The extended course of treatment that formed the relationship with the forum state was "at the heart of the controversy." *Id.* at 739.

Finally, Plaintiff emphasizes the Wellstar electronic records system used by South Carolina medical providers and patients in South Carolina to access their medical records and Plaintiff's use of Wellstar's website in South Carolina to make an appointment at Children's Hospital. (ECF No. 86, p. 7–8). Plaintiff reads *ALS Scan Inc. v. Digital Serv. Consultants* broadly to stand for the principle that "directing electronic activity into a state with the intention of engaging in business or other interactions with forum residents may be sufficient to create minimum contacts that will support the exercise of personal jurisdiction." (ECF No. 86, p. 7).

However, as WMHI clarifies, *ALS Scan* articulated the following test for contacts that form the basis for the exercise of specific jurisdiction: the defendant "(1) directs electronic activity into the State, (2) with the manifested intent of engaging in business or other interactions within the State, and (3) that activity creates, in a person within the State, a potential cause of action cognizable in the State's courts." *ALS Scan*, 293 F.3d at 714. Plaintiff alleges only the existence of the Wellstar website and its use for research and appointment booking. Notwithstanding the expansion of relatedness and causation in *Ford*, the sliding scale articulated in *Zippo* distinguished between passive websites and those involving a higher "level of interactivity." *Id.* at 714. Admittedly, Wellstar's website allowed individuals, at their discretion, to schedule an appointment at Children's Hospital. However, each of these patients, including Plaintiff, knew that they would have to go to Georgia to attend the appointment and receive the medical care. Unlike an online product order, where the seller would have to affirmatively accept the relationship by delivering the product to the forum state, WMHI did not have to do anything other than await Plaintiff and Roe's arrival at her appointment. To authorize the exercise of specific jurisdiction based on a website, like that alleged here, would render all internet contacts constitutionally sufficient.

As discussed above, any use of online records by Plaintiff or Roe in South Carolina was related to continuing care, not the alleged medical malpractice. Therefore, the website's availability, appointment scheduling, and electronic records are not a basis for specific jurisdiction as they fail at least the relatedness prong.

Even without wrestling with the denials in the Stevens Affidavit, Plaintiff fails to include the necessary factual allegations to establish that any of WMHI's alleged contacts with South Carolina are related to this cause of action. The fairness analysis is only relevant in the rare

situation where despite purposeful availment and relatedness, the exercise of personal jurisdiction would run afoul of principles of fundamental fairness. *See World-Wide Volkswagen Corp.*, 444 U.S. at 291 (reaffirming that a court "may exercise personal jurisdiction over a nonresident defendant only so long as there exist 'minimum contacts' between the defendant and the forum" so long as those contacts do not "offend 'traditional notions of fair play and substantial justice.'" (quoting *Int'l Shoe*, 326 U.S. at 315)). The fairness analysis cannot be used to authorize the exercise of an otherwise unconstitutional exercise of personal jurisdiction. *See id.*; *Briskin v. Shopify*, 135 F.4th 739, 750–51 (9th Cir. 2025). Therefore, the Court need not address whether the exercise of specific jurisdiction would be reasonable in this case because Plaintiff has not set forth a prima facie showing that WMHI is subject to personal jurisdiction in South Carolina in this cause of action.

### iii. Jurisdictional Discovery

Alternatively, Plaintiff seeks jurisdictional discovery to identify the correct party, but jurisdictional discovery is not intended to hamstring an improper party to litigation while Plaintiff seeks the identity of the correct party. "Discovery under the Federal Rules of Civil Procedure is broad in scope and freely permitted." *Carefirst of Maryland, Inc. v. Carefirst Pregnancy Centers, Inc.*, 334 F.3d 390, 402 (4th Cir. 2003) (citation omitted). However, "[w]hen a plaintiff offers only speculation or conclusory assertions about contacts with a forum state, a court is within its discretion in denying jurisdictional discovery." *Id.* (citing *McLaughlin v. McPhail*, 707 F.2d 800, 806 (4th Cir.1983) (holding that district court did not abuse its discretion in denying jurisdictional discovery when, "[a]gainst the defendants' affidavits," plaintiff "offered nothing beyond his bare allegations that the defendants had had significant contacts with the [forum] state of Maryland" (internal quotation marks omitted)); *ALS Scan*, 293 F.3d at 716 n.3

(upholding district court's refusal to allow plaintiff to engage in jurisdictional discovery where plaintiff's request was based on "conclusory assertions"); *see also Rich v. KIS Cal., Inc.*, 121 F.R.D. 254, 259 (M.D.N.C.1988) ("[W]here a plaintiff's claim of personal jurisdiction appears to be both attenuated and based on bare allegations in the face of specific denials made by defendants, the Court need not permit even limited discovery confined to issues of personal jurisdiction should it conclude that such discovery will be a fishing expedition."). Plaintiff claims that their inability to "investigate" or offer competing facts is limited to publicly available information. (ECF No. 86-1, p. 2). Plaintiff alleges that Wellstar Health System—not WMHI—controls the relevant information. (ECF No. 86-1, p. 2). Thus, jurisdictional discovery with WMHI would not offer the information desired by Plaintiff.

### b. Failure to State a Claim

Because this motion to dismiss is granted for lack of personal jurisdiction, WMHI's alternative arguments to dismiss the claims against WMHI for failure to state a claim are moot.

## IV. CONCLUSION

For the reasons stated above, WMHI's motion to dismiss for lack of personal jurisdiction (ECF No. 83) is granted.

IT IS SO ORDERED.

Joseph F. Anderson, Jr.

November 23, 2026
Columbia, South Carolina

Joseph F. Anderson, Jr.
United States District Judge